UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**P.H., A MINOR,**

   Plaintiff,

v().

                                No. 4:24-cv-00951-P

**CARROLL INDEPENDENT
SCHOOL DISTRICT, ET AL.,**

   Defendants.

## MEMORANDUM OPINION & ORDER

Before the Court is Defendants' Motion to Dismiss. ECF No. 12. After considering the Motion, the briefs, and the applicable law, the Court will **GRANT in part** and **DENY in part** the Motion.

## BACKGROUND

Plaintiff P.H. was a sixth grader at Durham Intermediate School, which is part of Carroll Independent School District (CISD). During the lunch hour, while playing with his friends, P.H. used his foot to kick/tap another student in the back of the leg, in what he calls the "upper thigh area." He repeated that action four times, mistaking the student for a friend of his. Each time the other student turned to face him, P.H. turned around, pretending not to be paying attention.

Later that day, Assistant Principal Gary Sullivan told P.H.'s father that P.H. had "kicked" another student. The following day, Principal Sullivan sent P.H.'s parents a letter informing them that P.H. was being suspended, "pending further investigation and determination of ultimate discipline for the following misconduct and/or violation of the Carroll ISD Student Code of Conduct: While walking out of the cafeteria, [P.H.] allegedly, unprovoked, penetrated another student's anus approximately four times with his foot. The alleged victim was violated

by these actions."

Shocked at the apparently grotesque characterization of the incident by CISD's administrators, P.H.'s parents followed the school's prescribed grievance process. P.H.'s parents complained of P.H.'s treatment by Principal Sullivan as well as Dr. Tamy Smalkas, the Assistant Superintendent for Administration, and Whitney Wheeler, another CISD administrator (together, the Individual Defendants). At the first level of the grievance process, Dr. Smalkas defended the school's disciplinary letter, stating: "As administrators, it is important to communicate the incident professionally and appropriately to the parents of the students involved and since there was a violation of a student's 'bottom' or 'butt,' it was appropriate to use the phrase that [P.H.] 'penetrated [another student's] anus approximately four times." Dr. Smalkas also cited P.H.'s alleged prior disciplinary history to justify the measures CISD took.

P.H.'s parents appealed the decision. A deputy superintendent for CISD presided over the second stage of the disciplinary process. At the end of the second stage, the administrator removed all language from the letters that referred to "penetration" of a student's "anus."

Not satisfied, P.H.'s parents went on to the final grievance step: a hearing with the CISD Board. The Board supported the administrators, finding they had properly investigated the alleged victim's accusations. The Board was advised by counsel who at other times represents the Individual Defendants. P.H.'s parents brought counsel to represent them at the hearing, but apart from a brief opening presentation, counsel for P.H.'s parents was not permitted to speak; instead, the parents had to answer questions directly. No such limit was placed on the Individual Defendants. P.H.'s parents also learned that the Board had access to evidence—including video footage and a redacted copy of a statement by the alleged victim—that they were not allowed to see.

The school's disciplinary actions caused P.H. to suffer distress. Other students mocked him over the incident, calling him a "child molester." That occurred because, according to P.H.'s parents, the Individual Defendants repeated the salacious accusation against him to others in

the community. P.H. developed post-traumatic stress disorder and began having suicidal ideations. He has required "extensive therapy."

P.H., by and through his parents as next friends, sued CISD and the Individual Defendants. Against CISD, P.H. brings claims under 42 U.S.C. § 1983 for violating his rights to procedural and substantive due process and under 29 U.S.C. § 705 for violation of his rights under the Rehabilitation Act. Against the Individual Defendants, he brings a claim under Texas law for defamation based on the allegedly false and damaging statement that he penetrated another student's anus with his foot. Defendants move to dismiss the entire Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 8 does not require detailed factual allegations, but "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6).

To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (cleaned up).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most

favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.* at 678.

## ANALYSIS

Defendants argue that all of P.H.'s claims should be dismissed. P.H. disagrees. The Court will address each claim in turn.

### A. Section 1983 Claims

P.H. alleges CISD deprived him of his right to due process as guaranteed by the Fourteenth Amendment by failing to provide an adequate grievance procedure. In his response to the Motion to Dismiss, P.H. clarifies that he intended to state claims for violations of his rights to both procedural and substantive due process. The Court begins with procedural due process before turning to substantive due process.

1. Procedural Due Process

The Due Process Clause of the Fourteenth Amendment guarantees a baseline of "notice and opportunity to be heard" before an arm or agent of a state can take away a person's property. *Goss v. Lopez*, 419 U.S. 565, 579 (1975). That guarantee extends to public-school students who face disciplinary action. *Id.*; *see also Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969) (students still enjoy constitutional rights when they enter the "schoolhouse gate"). Although discipline must adapt to the context of widely varying circumstances, due process requires a minimum of "oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Goss*, 419 U.S. at 581.

P.H. alleges he and his parents were denied permission to read the complaint made by the alleged victim or see the video footage of the incident prior to the hearing. At this stage, that is enough to state a plausible claim for relief under Section 1983. Under *Goss*, the due

4

process required depends on the circumstances of each case. In other circumstances, the notice and explanation CISD gave may have been enough. But considering the shocking and grotesque nature of the accusation against P.H., a commensurate degree of process was due. The language in CISD's disciplinary letter was tantamount to an accusation of aggravated sexual assault. *See* TEX. PEN. CODE § 22.021(a)(1)(A)(i). At the very least, due process meant allowing P.H. to see what evidence could possibly justify putting such scandalous language in his disciplinary record. Thus, at this stage, the Court finds that P.H. has sufficiently cleared the first hurdle in pleading his procedural due process claim.

One final hurdle lies before P.H. at the pleading stage. P.H. must have also alleged that the deprivation "was committed by a person acting under color of state law." *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). That requirement comes from Section 1983, which provides a right of action only for violations of civil rights "under color of any statute, ordinance, regulation, custom, or usage" of a state or local government. 42 U.S.C. § 1983. Local governmental bodies "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 691 (1978). The final policy-making authority of a Texas school district is the school board. *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 365 (5th Cir. 2020). Therefore, to survive a motion to dismiss under 12(b)(6), P.H. must have alleged that some official policy or custom adopted by the CISD Board caused him to be denied due process. An official policy is either: (1) a policy statement officially adopted and promulgated by the municipality's lawmaking body; or (2) a practice so widespread that it in effect achieves the status of official municipal policy. *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992). P.H. could satisfy this requirement by pleading that CISD delegated its policymaking authority to a subordinate officer. *Longoria ex rel. M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 271 (5th Cir. 2019).

On this point, P.H.'s complaint falls short of the pleading standard. The Complaint refers by name to a policy behind CISD's actions but does not allege facts that permit a valid inference that one actually exists. He

5

merely asserts, in conclusory fashion, that CISD's handling of the incident reflects a policy of blatant partiality. He writes:

> Defendant's actions and omissions reflect a policy of CISD's Board to support CISD administrators in grievance proceedings even where such support requires extreme partiality and willful blindness to the actual facts of the matter and even where such support requires blatant suppression of evidence, silencing of parents' counsel, disregard of conflicts of interest, glossing over CISD allegations that could not be true as a matter of logic, anatomy, or physics, and otherwise disregarding the Board's role as an impartial arbiter in the grievance process.

ECF No. 16 at 11.

Under the oft-cited *Twombly* standard, that is not enough. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (cleaned up). P.H.'s allegations fit that description. They are merely consistent with the existence of a policy of partiality; they do not give rise to a reasonable inference that such a policy exists.

In *Twombly*, the plaintiff brought a claim for market conspiracy under the Sherman Act. 550 U.S. at 550. The plaintiffs alleged that the defendants engaged in parallel business conduct and did not engage in "meaningful competition." *Id.* at 565. Their complaint concluded that the defendants entered a conspiracy to prevent competition in the telephone service industry. *Id.* That did not satisfy the Rule 8 pleading standard. *Id.* at 566. Although the allegations were consistent with the existence of price-fixing practices, they were equally consistent with a "natural, unilateral reaction" of each defendant. *Id.* The Court viewed the complaint's "stray statements" that spoke directly of an agreement as nothing more than "legal conclusions resting on the prior allegations." *Id.* at 564.

P.H.'s complaint suffers from the same flaw. In response to Defendants' Motion, P.H. argues that three facts alleged in the complaint indicate that the alleged policy was in place: (1) The Board's

6

use of an attorney who represented the administrators; (2) The Board's refusal to allow P.H.'s attorney to speak meaningfully at the hearing; and (3) The Board's approval of the administrators' decision despite the outrageous nature of the accusations. ECF No. 16 at 12. But assuming the truth of those facts, it is just as likely that this was the only time the Board acted unfairly as it is that a policy of bias existed. P.H. alleges no other facts suggesting CISD had a policy or custom of supporting administrators when they make shocking and impossible-sounding claims. Thus, the Court finds P.H. fails to allege a policy or custom of partiality in grievance proceedings.

But alleging a district-wide policy of pro-administrator bias is not P.H.'s only avenue to satisfy the "under color of law" element. Alternatively, a single decision can constitute a municipal policy if the action complained of was taken by an actor with final policy-making authority. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). Just as a one-time legislative action by a city's legislative body qualifies as a government policy under § 1983, so too can a one-time discretionary decision by a policy-maker. As long as the actor has the authority to set final policy about the relevant activity, even a one-time decision "tailored to a particular situation and not intended to control decisions in later situations" can serve as the basis for municipal liability. *Id.* at 481–82. And that is exactly what P.H. argues.

P.H. asserts the moving force behind his alleged injury was ultimately the Board failing to provide him a meaningful hearing as they had predetermined the result. Specifically, P.H. alleges that the Board: "(1) predetermined the result; (2) mischaracterized the evidence; (3) used as Board counsel an attorney who represent[ed] the individual administrators on other occasions; (4) allowed the attorney for the school administrators to speak freely, but did not allow Plaintiff's attorney to contribute meaningfully to the proceeding; (5) relied on evidence never shown to Plaintiff or his parents; and (6) engaged more in posturing than in the activities of an impartial adjudicative body." ECF No. 16 at 10 (citation modified). Taking these allegations as true for the purpose of this Motion, the Court finds that P.H. has sufficiently plead that the Board, who is the ultimate decision maker for the school district, took

7

the final action which served as "the basis of [his] § 1983 claim." *Webb v. Town of Saint Joseph*, 925 F.3d 209, 215 (5th Cir. 2019) (citation modified). Therefore, Defendants' Motion to Dismiss is **DENIED** on this claim.

### 2. Substantive Due Process

In addition to procedural due process, the Due Process Clause of the Fourteenth Amendment guarantees citizens the right to substantive due process. The Supreme Court of the United States has recognized that "due process protection in the substantive sense limits what the government may do in both its legislative and its executive capacities." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (citation modified). While the central concern of due process is protecting individuals against any type of arbitrary government action, the "criteria to identify what is fatally arbitrary differ depending on whether it is legislation or a specific act of a government officer that is at issue." *Id.* The Supreme Court held that "only the most egregious official conduct" is so fatally arbitrary that it violates due process. *Id.* at 846. While the Supreme Court in *Lewis* endorsed a test that asks whether executive conduct "'shocks the conscience'" and "violates the 'decencies of civilized conduct,'" the situation before it in that case involved a high-speed police chase. *Id.* at 836–37, 846 (quoting *Rochin v. California*, 342 U.S. 165, 172–73 (1952)). The Supreme Court went on to distinguish between situations that require fast action on behalf of the executive, like police chases, and those that afford the executive time for deliberation and forethought. *Id.* at 850–53.

In cases where a plaintiff alleges a violation of substantive due process by executive or quasi-legislative action in a situation that affords a government actor time for deliberation, the government action is subject to a rational basis test. *See Vineyard Invs., L.L.C. v. City of Madison, Mississippi*, 440 Fed. App'x 310, 313–14 (5th Cir. 2011); *Mikeska v. City of Galveston*, 451 F.3d 376, 379 (5th Cir. 2006). However, courts in the Fifth Circuit have applied the shocks the conscience standard to cases involving actions directed towards individual interests, even when government actors had time to deliberate. *See Matto v. Gonzales*, 175 Fed. App'x 670, 671 (5th Cir. 2006) (involving the

deportation of an individual); *see also Nobles Construction, L.L.C. v. Washington Parish*, 544 Fed. App'x 263, 267–68 (5th Cir. 2013) (involving the award of a contract to someone other than the lowest bidder); *also Bragg v. Edwards Aquifer Auth.*, 342 Fed. App'x 43, 45 (5th Cir. 2009) (involving an individual's water rights). And they have applied the rational basis test when the action "'applies to a large group of interests.'" *Reyes v. N. Texas Tollway Auth.*, 186 F. Supp. 3d 621, 635 (N.D. Tex. 2016) (Fish, J.), *aff'd*, 861 F.3d 558 (5th Cir. 2017) (quoting *Gaalla v. Citizens Medical Center*, 407 Fed. App'x 810, 813 (5th Cir. 2011)). Thus, because this case involves an individual's rights, the question before the Court is whether Defendants' actions shock the conscience.

"[I]n a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Lewis*, 523 U.S. at 847 n.8. "[T]he constitutional concept of conscience shocking duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability." *Id.* at 848. The officials' actions must be "grossly disproportionate to the need for action under the circumstances and . . . inspired by malice rather than merely careless or unwise excess of zeal." *Petta v. Rivera*, 143 F.3d 895, 902 (5th Cir.1998) (per curiam). Here, taking Plaintiff's allegations as true, he has failed to establish that the Defendants actions "violate[] the 'decencies of civilized conduct.'" *Lewis*, 523 U.S. at 836–37. This is best evidenced by the administrator removal of all language from the letters that referred to "penetration" of a student's "anus," which P.H. alleges is the arbitrary and capricious language that shocks the conscience. ECF No. 16 at 11–12. Accordingly, the Court finds Plaintiff has failed to state a claim for substantive due process, and Defendants' Motion is **GRANTED** as to this claim.

### B. Violation of the Rehabilitation Act

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of . . . his disability,

9

be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Generally, an "individual with a disability" is one who has "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A); *see id.* § 12102(1)(B)–(C). Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A). Furthermore, major life activities include "the operation of a major bodily function," which necessarily includes functions of the "brain." *Id.* § 12102(2)(B).

"To state a claim for disability discrimination . . ., a plaintiff must plausibly allege: '(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability.'" *J.I. ex rel. Interiano v. Jefferson Par. Sch. Bd.*, No. 23-1532, 2023 WL 8563034, at *2 (E.D. La. Dec. 11, 2023) (quoting *Wells v. Thaler*, 460 F. App'x 303, 311 (5th Cir. 2012)). The plaintiff must also allege that his disability is the "sole reason" for the discrimination, not merely a "motivating factor." *See, e.g., Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 504–05 (5th Cir. 2002) (emphasis added). Actions "motivated, at least in part, by other considerations," such as "personal animus," are insufficient. *See Shah v. Univ. of Tex. Sw. Med. Sch.*, 54 F. Supp. 3d 681, 704–05 (N.D. Tex. 2014).

In this case, Defendants assert P.H. has failed to plead that his disability (ADHD) was the sole reason for the discrimination. ECF No. 13 at 10–11. In his Response, P.H. asserts he pled that his disability was the sole reason because "Defendants' dismissive attitude towards his disability caused them to perceive him erroneously as a disciplinary problem which led them to target him as such through the improper mechanisms described." ECF No. 16 at 15. Specifically, P.H. claims "CISD consistently throughout the 2022-2023 school year failed to take

his disability into consideration in assessing disciplinary issues and, as a result, exposed him repeatedly to disciplinary measures which caused him in turn to be viewed inappropriately by CISD administrators" causing them to distort the evidence. *Id.* at 15. However, failing to properly administer an accommodation plan throughout the year and disciplining a student for kicking/tapping another student four times (however overblown the allegations may have been) are two distinct things. Therefore, the Court finds P.H. has failed to plead that the sole cause of the disciplinary action taken against him was his ADHD. Further, Plaintiff has not sufficiently alleged that the failure to implement the plan or the discipline were caused only by discriminatory motive. Consequently, Defendants' Motion is **GRANTED** as to this claim.

### C. Defamation

Finally, the Court turns to P.H.'s last claim—defamation. The Court has thoroughly reviewed the Parties' arguments on this claim, and it is evident to the Court, that it, and the Parties, would benefit from further discovery on this issue. The merits of many of the Parties' arguments will be flushed out by a better picture of who said what to who, and when it was said. Thus, the Court finds that Defendants' arguments on this claim are better suited for a summary judgment motion. Accordingly, Defendants' Motion is **DENIED** as to this claim.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion as to the substantive due process and Section 504 claims and **DENIES** Defendants' Motion as to the defamation and procedural due process claims. It is therefore **ORDERED** that Plaintiff's substantive due process and Section 504 claims are **DISMISSED.**

**SO ORDERED** on this **27th day of June 2025.**

*[Signature: Mark T. Pittman]*

MARK T. PITTMAN
UNITED STATES DISTRICT JUDGE